**In re Peter Frank SHAVER, Debtor.**

**Nancy H. SHAVER, Plaintiff-Appellee,**

v.

**Peter Frank SHAVER,
Defendant-Appellant.**

**No. CV–R–83–135–ECR.**

**Bankruptcy No. 82–192.**

**Adv. No. 82–157.**

United States District Court,
D. Nevada.

Sept. 30, 1983.

Alan Smith, Reno, Nev., for defendant-appellant.

William Bernard, Reno, Nev., for plaintiff-appellee.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

Appellee initiated this case by a complaint in Bankruptcy Court asking that an obligation owed to her by Appellant, her former husband, be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(5). The statute provides that bankruptcy does not discharge an individual debtor from any debt to a former spouse for alimony to, maintenance for or support of that spouse in connection with a divorce decree or property settlement agreement.

The marriage of the parties hereto was dissolved by a decree handed down by an Indiana Superior Court on June 27, 1979, after a trial. The decree provided for the custody of the parties' four children, ordered Appellant to pay child support in the amount of $1500 per month and further ordered him to pay to Appellee, "in final settlement of the property rights of the parties and division of marital assets," the sum of $150,000 in equal monthly installments of $2,000 each over a period of 75 months. Nothing was said as to the consequences of the death of either party prior to completion of the payments.

Subsequently, Appellant filed a motion to correct errors, which is an Indiana procedural requirement preparatory to appeal. While the motion was pending, extensive negotiations took place. Agreement was reached as to revisions to be made to the decree of divorce, the revisions being the result of input from the attorneys of both parties. The attorneys mutually presented their proposed revisions to the Superior Court Judge the evening of New Year's Eve, 1979. He signed an amended decree the same date, December 31, 1979.

The amended decree provided that "as and for [Appellee's] complete discharge of her marital and dower rights arising from the marriage," she was to be paid the sum of $197,300 in periodic payments over 121 months. The payments were to abate in the event of her death.

Thus, Appellant obtained smaller monthly obligations ($1500 per month for 100 months and then $1,000 per month for 21 months, after initial lump sum payments totalling $26,300), whereas Appellee would receive an extra $47,300 if she lived the whole 121 months. Testimony at a hearing in Bankruptcy Court indicated several reasons for the change. The smaller monthly

payments would be easier for Appellant to make. Further, the change qualified him to deduct from his income, for income tax purposes, the amount of the payments to the extent they are includable in Appellee's gross income pursuant to 26 U.S.C. § 71. The extra $47,300 for Appellee was meant to represent interest for having to wait an extra 46 months before the whole amount was received, as well as to compensate her for the income tax liability arising from the change.

After a hearing, U.S. Bankruptcy Judge Samuel J. Steiner ruled in favor of Appellee, holding that the $197,300 represents alimony, which is nondischargeable. In doing so, the Judge rejected Appellant's contention that the sum represents a property settlement, which would be a debt dischargeable in bankruptcy. Judge Steiner's opinion is reported at 27 B.R. 452.

Appellant's appeal to this Court brings into play Local Bankruptcy Rule 118. It provides that, in conducting review of a bankruptcy judge's order or judgment, the district judge may accept, reject or modify, in whole or in part, the order or judgment, "and need give no deference to the findings of the bankruptcy judge."

In their briefs on appeal, both sides agree that the ultimate issue is whether the debt from Appellant to Appellee represents a property settlement (dischargeable in bankruptcy) or alimony (nondischargeable). Appellant's major contentions are as follows:

(1) Under Indiana law, unless a spouse is so physically or mentally incapacitated as to be unable to support herself, a court may not award alimony except if the parties agree to it in writing; no written agreement was received in evidence by the Bankruptcy Court;

(2) The amended decree was intended to divide property; the income tax provisions of 26 U.S.C. § 71, taken advantage of by Appellant, apply to periodic payments under a property settlement as well as for alimony;

(3) No mention is made of "alimony" in the amended decree;

(4) The $197,300 amount in the amended decree is based on the $150,000 property settlement fixed in the original decree, plus interest to compensate Appellee for having to accept smaller monthly payments over a longer period of time; the $150,000 figure clearly was determined by the extent of the parties' marital property; and

(5) Because there are no ambiguities in the amended decree, the Bankruptcy Judge erred in allowing parol evidence concerning the intent of the parties.

In turn, Appellee emphasizes the following significant facts:

(a) The $150,000 figure in the original decree was not conditioned by any provision for termination of monthly payments in the event of the death of Appellee; the amended decree specifies that monthly payments under the $197,300 figure shall abate upon her death;

(b) Appellant testified in a Bankruptcy Court hearing that he had been present at the courthouse in Indiana and had approved the amended decree before it was signed by the judge;

(c) The amended decree includes provisions covering both division of property and periodic payments, and the two matters are found in separate parts of the document;

(d) Evidence indicates that the periodic payments were meant to balance the incomes of the parties;

(e) The lengthy term of the periodic payments (121 months) suggests it is meant for support;

(f) Periodic payments usually are viewed as support when children are involved;

(g) The amended decree specifies that Appellant's obligation to make the periodic payments shall abate upon the death of Appellee; and

(h) A brief filed on behalf of Appellant in Nevada State Court in connection with a Motion to Modify Foreign Judgment argues that the periodic payments here involved really are support payments, so

that the Nevada Court has jurisdiction to modify them.

*Discussion;*

Indiana Code sec. 31–1–11.5–9(c) declares that a court may make no provision for alimony except after finding that a spouse is so physically or mentally incapacitated as to materially affect her ability to support herself. However, sec. 31–1–11.5–10(a) provides, to promote the amicable settlement of disputes between husband and wife attendant to dissolution of their marriage, "the parties may agree in writing" to provisions for alimony, property settlement and child custody and support. Subsection (b) of the same statute authorizes a divorce court, if it approves such an agreement, to incorporate and merge it into the decree or, in the alternative, the court may make its own provisions as to these matters.

■ An Indiana court may not provide for alimony except in accordance with the State's statutory scheme. *Meehan v. Meehan*, 425 N.E.2d 157, 163 (Ind.1981). The agreement must be in writing, so that it would be error for the court to adopt an oral agreement. *See Waitt v. Waitt*, 172 Ind.App. 357, 360 N.E.2d 268, 272 (1977). The intent of the Indiana Legislature was to encourage settlement agreements. *Stockton v. Stockton*, 435 N.E.2d 586, 589 (Ind.1982). By requiring the agreement to be in writing, the court has some assurance that the parties have considered the fairness of its provisions. *Waitt* 360 N.E.2d at 272. Further, the statutory scheme of the parties reaching an agreement is the only way that Indianans may take advantage of the income tax treatment afforded by 26 U.S.C. § 71. *Hicks v. Fielman*, 421 N.E.2d 716, 721 (Ind.1981).

■ Despite the requirement that the agreement be in writing, the trial court may accept, reject or modify it, in whole or in part. *Flora v. Flora*, 166 Ind.App. 620, 337 N.E.2d 846, 852 (1976). This serves to point out that it is the decree itself, into which terms of the agreement are merged, that is enforced against the parties. Ind. Code. sec. 31–1–11.5–10(b). Perhaps that is why a recent Indiana appellate court opinion noted that in deciding whether to accept an agreement, in the absence of unfairness, fraud or coercion, "the court should not second-guess the parties, particularly where both are represented by counsel." *Stockton v. Stockton*, 435 N.E.2d 586, 589 (Ind.1982). The Superior Court judge may well have been following this admonition when he signed the amended decree. It is clear that said decree embodied the agreement hammered out by the parties and their counsel in protracted negotiations. If the judge felt that the amended decree itself constituted the parties' written agreement, he would not have been blazing a completely new legal trail. Consent of the parties stipulated into the record of a hearing has been held sufficient to excuse, at least temporarily, a statutory requirement of written approval by a surrogate. *In re Holland*, 87 Misc. 468, 151 N.Y.S. 239, 240 (1914).

■ 11 U.S.C. § 523(a)(5) specifies that an obligation to a spouse for alimony, maintenance or support is not dischargeable in bankruptcy provided the liability is "actually in the nature of alimony, maintenance, or support." Prior to the enactment of the Bankruptcy Code of 1978, which took effect October 1, 1979, state law was applied to determine whether an obligation should be characterized as alimony or property settlement; however, under the Code this determination must be made by application of federal, rather than state, law. *Stout v. Prussel*, 691 F.2d 859, 860–1 (9th Cir.1982). Thus, even if the Indiana judge believed he was merely dividing property, the Bankruptcy Court and this Court are required to reexamine the facts and circumstances under federal standards to determine whether property or alimony was being provided for in the amended decree. The Indiana court possessed the statutory duty and authority to divide the property of the parties even in the absence of written agreement. Ind. Code. sec. 31–1–11.5–11; *Waitt v. Waitt* 360 N.E.2d at 272–3. If the Court thought that is what it was doing, the federal bankruptcy and district courts still would be able to characterize the obligation as being

in the nature of alimony under federal standards.

▮ On the other hand, if the Indiana Superior Court judge believed he was awarding alimony to Appellee, but was committing error because there was no written agreement between the parties, the federal courts still would be empowered to act. Appellant and his attorney actively urged the judge to sign the amended decree. Under the doctrine of "invited error" a party cannot successfully take advantage of error committed by the court at his request. *Jentick v. Pacific Gas & Electric Co.*, 18 Cal.2d 117, 114 P.2d 343, 345 (1941); *see also United States v. Sullivan*, 435 F.2d 650, 652 (9th Cir.1970); *United States v. Montecalvo*, 545 F.2d 684, 685 (9th Cir. 1976); *United States v. Alexander*, 695 F.2d 398, 402 (9th Cir.1982).

Even if the amended decree was a nullity, which no one contends, it is undisputed that there was an agreement between the parties hereto. It could have been considered a separation agreement or property settlement agreement by them. In either event the obligation from Appellant to Appellee arising therefrom would be subject to characterization as alimony or property division, and its dischargeability in bankruptcy is determinable in these proceedings. *See In re Ferradino*, 14 B.R. 196, 198 (D.Nev.1981).

▮ Alimony arises from the relation of marriage. It is founded on the natural and legal duty of the husband to support the wife, and it is the obligation based on this duty which is saved from discharge in bankruptcy. *Norris v. Norris*, 324 F.2d 826, 828 (9th Cir.1963). The language of the divorce decree must be examined to determine whether a provision requiring the husband to make monthly payments to the wife for a specific period of time is alimony or a property settlement. *In re Ingram*, 5 B.R. 232, 234 (N.D.Ga.1980). In ascertaining its meaning and even in deciding whether the decree is ambiguous, the court should consider the surrounding circumstances and all other relevant incidents bearing on the intent of the parties when they entered into the agreement embodied in the decree. *In re Smith*, 436 F.Supp. 469, 475 (N.D.Ga.1977). Parol evidence, therefore, is admissible. *Ibid; West v. United States*, 332 F.Supp. 1102, 1106 (S.D. Tex.1971). The nature of the husband's obligation may change by amendment of the divorce decree, so that the amended decree must be analyzed. *In re Vickers*, 24 B.R. 112, 115 (M.D.Tenn.1982).

▮ Certain facts are important here in characterizing Appellant's obligation to Appellee. The debt is payable in installments over a substantial period of time. *Ibid; In re Ferradino* at 198. This is usually indicative of alimony. *In re Smith* at 475. The obligation terminates upon the wife's death. As Judge Steiner said in his Opinion: "It is difficult to imagine a true property division terminating on the death of one of the spouses." *See also Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982); *In re Smith* at 475. Both division of property and periodic payments to Appellee are provided for in the amended decree, but in separate parts of that decree. This also suggests that the parties intended the payments to be alimony. *See Stout* at 861. In addition, the marriage was of some duration and there were four dependent children. *In re Vickers* at 114. Alimony is more likely to be awarded under such circumstances especially where, as here, the wife does not possess training or skills that would enable her to earn income comparable to the husband's potential.

The burden is on Appellee, as the party objecting to discharge, to prove facts substantiating her objection. Bkrptcy. Rule 407. She has sustained that burden.

IT IS, THEREFORE, HEREBY ORDERED that the Opinion of Judge Steiner, filed February 15, 1983, be accepted in whole, and the same is AFFIRMED.